### DEFRIER et al. v. THE NICARAGUA.

(District Court, S. D. Alabama. April 10, 1897.)

#### No. 764.

1. SHIPPING—TREATMENT OF PASSENGERS—LODGING, BEDDING, ETC.

Passengers who come aboard a vessel mainly engaged in the carriage of freight, after the cabin room is all taken, and who for two days, while loading is going on, make no claim to cabin accommodations or for bedding, are to be considered as impliedly agreeing that their ship room and quarters are to be on deck, and that such accommodations are to be deemed reasonable.

2. SAME.

A vessel is not bound, in the absence of special contract, to furnish bedding for steerage or deck passengers.

3. SAME—INSUFFICIENCY OF FOOD.

In the absence of special contract to the contrary, a vessel is bound to furnish a sufficient quantity of suitable food for deck passengers, and is liable in damages for the master's failure to do so when it is within his power.

4. SAME—DAMAGE TO BAGGAGE.

Deck passengers, whose baggage is not in trunks, and who keep it in their own possession, cannot hold the ship liable for its loss or damage.

This was a libel by Joseph Defrier and others against the steamship Nicaragua to recover damages suffered because of alleged insufficiency of food and accommodations furnished to them as passengers.

Smith & Gaynor, for libelants.
Pillans, Torrey & Hanaw, for claimant.

TOULMIN, District Judge. A person who undertakes, though only on that particular occasion, to carry for hire, without special contract, incurs the responsibility of a common carrier. 2 Add. Cont. p. 715, and note. A contract for passage by water implies something more than ship room and transportation. It includes reasonable comforts, necessaries, and kindness, and suitable food and the common means of relief in cases of sickness. Chamberlain v. Chandler, 3 Mason, 242, 5 Fed. Cas. 413. It is the duty of the common carrier by water to provide his passengers with comfortable accommodations, and with a sufficient supply of wholesome food, unless there is a contract to the contrary or a fair understanding to the contrary; and the carrier must subject his passengers to no suffering or inconvenience which can be avoided by reasonable care and effort. While the carrier has no right to carry an additional passen-

ger when his vessel is already so full that by the additional passenger other passengers are made uncomfortable, yet the added passenger might have no right to complain, and would not if he knew what annoyance and discomfort he must encounter by going on board. 1 Pars. Shipp. & Adm. p. 615.

In view of these general principles, let us consider this case. The evidence does not establish to my satisfaction that there was any special contract for passage; that is, that the contract provided for any particular kind of passage, or specified the character of accommodations to be furnished. That first-class passage and accommodations were not to be furnished is clear, and that the libelants so understood it is equally clear. But the contract implied something more than transportation. It included reasonable comforts and food,—reasonable in view of the circumstances; reasonable in view of the fact that the vessel had only cabin accommodations for a few passengers, and these were for first-class or cabin passengers, and in view of the fact that the vessel was mainly a freight vessel, and on this occasion with a full cargo of fruit in her hold and below decks, with no berths or below-deck room for passengers. These facts must have been well known to the libelants before they engaged their passage; at least, before they paid their passage money and concluded their contract for transportation. They had been two days aboard the vessel. They had seen the cargo coming aboard and being stored away. They saw what the cabin accommodations were, and had not undertaken to occupy them, or to claim the right to do so. They saw that the vessel had no other comfortable accommodations for passengers, and they had contented themselves for the two days they had been aboard with deck passage and accommodations, as far as ship room was concerned. So far as the evidence shows, they made no inquiry as to where they were to lodge, or to be protected from the weather. When in the confusion and crowding by the presence of a large number of men engaged in loading the vessel, and also by the cargo itself, they did ask, when at Livingston, if they were not to be better treated, and were told that, when they got off to sea, they would be cared for, or something to that effect. But in all this we hear no complaint about the absence of bedding and their lodging place, and no demand for cabin accommodations. Now, in view of all these circumstances, my opinion is that there was a fair understanding that their ship room and quarters were to be on deck, and that these, under the circumstances, were to be deemed reasonable accommodations. They doubtless would have been comfortable accommodations, at least reasonably so, and would have been satisfactory to libelants, had it not been for the rain and wind that was encountered on the voyage. Notwithstanding this, the master should have subjected these passengers to no suffering or inconvenience which could have been avoided by reasonable care and effort. There is no allegation that the inconvenience and discomfort to which libelants were subjected could have been avoided by reasonable care and effort. But it is alleged that, by the contract, the master undertook, and it was his duty, to furnish bedding and lodging. Under the

law, and according to the usage as proved, the libelants, even if they had been steerage passengers, were not entitled to have bedding furnished by the vessel, and, as I have said, there was no special contract providing for it in this case. It is also alleged in the libel that libelants were exposed to the burning sun, and that the master refused to allow them the use of an awning. The proof shows that the awnings were up every day during sunshine, but it tends to show that they were taken down when it rained. The testimony, however, is not altogether harmonious on this point. There is some evidence that the awnings were taken down whenever it rained, and that it usually rained at night, and there is evidence that they were taken down only when there was a squall or an unusually strong wind. There was no cabin accommodation for these passengers, and no room in the below decks for them. The former was for the first-class passengers, and in the latter the cargo occupied the space. From this state of the evidence, I find some difficulty in determining whether the suffering and discomfort to which the libelants were subjected could or could not have been avoided by reasonable care and effort, so far as ship room and lodging were concerned. The defense has failed to aid the court in the consideration of this question by any evidence on the subject. But I have no such difficulty so far as the food was concerned. The evidence shows that a sufficiency of good or suitable food was not furnished, and that the master failed in his duty in this regard.

The main difficulty I have had in the case is to determine the question of damages. What amount of damages should be awarded to the libelants? There is no real ground of complaint, no right of action, unless the passenger has really been a sufferer from an insufficient supply of food, or from a failure to supply good and wholesome food. I find from the evidence that there was a failure to supply a sufficiency of good and wholesome food, and that the libelants were sufferers therefrom, some more and some less. Those who were sick must naturally have suffered more, but I am not satisfied that the master's failure to supply a sufficiency of proper food was the cause of their sickness. It might have rendered them less able to resist the effects of their sickness, but I do not find that bad food or the insufficiency of suitable food was the natural or direct cause of their sickness. I cannot therefore discriminate between the libelants on account of the sickness of some of them. I do not think this is a case for exemplary or punitive damages against the vessel and owners, and I shall award none. But it was within the power of the master to have given the libelants better food, and it was his duty to do so, and his refusal or failure to do it was a breach of duty under his contract, for which the vessel and owners are liable. They are liable to make compensation for the whole injury suffered by the libelants in body and mind, not as a punishment to the defendants, but as compensation to the libelants. Railway Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261.

Baggage belonging to a steerage passenger is in his exclusive possession, and the owners of the vessel are not liable for its loss or dam-

age (Cohen v. Frost, 2 Duer, 335; The St. Mary, 2 Blatchf. 330, Fed. Cas. No. 12,242), and any passenger taking baggage under his own control carries it at his own risk (2 Add. Cont. p. 733, par. 991; Henderson v. Railroad Co., 123 U. S. 61, 8 Sup. Ct. 60). The proof is that the libelants, except Mrs. Edith Defrier and Joe Defrier, kept their baggage in their own possession. Those named had trunks, and they were not protected or properly cared for by the vessel. Their contents were damaged by water, and the vessel is liable therefor. I award Mrs. Defrier $88 for the damage to her baggage, as shown by the evidence. She was allowed to occupy the cabin, and was fed from the master's table, and she makes no claim for damages other than for the damage to her baggage. I award Joe Defrier $50 for the damage to his baggage, and to each of the libelants, except Mrs. Edith Defrier, I award the sum of $50 as damages for their treatment, on the count as to the supply of food. A decree will be entered accordingly.