**Albert KORNBERG and Laura Kornberg, Plaintiffs-Appellants,**

v.

**CARNIVAL CRUISE LINES, INC., Defendant-Appellee.**

No. 83–5221.

United States Court of Appeals, Eleventh Circuit.

Sept. 18, 1984.

William M. Alper, Miami, Fla., Joseph Weiner, Philadelphia, Pa., for plaintiffs-appellants.

Rodney Earl Walton, Earl D. Waldin, Jr., Miami, Fla., for defendant-appellée.

Before RONEY and VANCE, Circuit Judges, and SIMPSON, Senior Circuit Judge.

RONEY, Circuit Judge:

Plaintiffs, Albert and Laura Kornberg, filed a class action suit against Carnival Cruise Lines seeking damages allegedly caused by the failure of the sanitary system of the TSS *Tropicale* during a one-week cruise in the Caribbean. The district court denied class action certification on the grounds that the class was not sufficiently numerous and that plaintiffs were

not typical of the class. On Carnival's motion for summary judgment, the court dismissed plaintiffs' suit as barred by certain disclaimers in their contract of passage. We reverse the summary judgment for a trial on the merits. As to the denial of class certification, we vacate and remand for further consideration on the ground that the reasons of the denial are insufficient.

Depositions and documentary discovery revealed that the *Tropicale* did indeed suffer problems with its sanitary system on the cruise in question as well as on two earlier cruises. The extent and duration of the breakdowns, however, were a matter of dispute. Eighteen percent of the passengers filling out a questionaire on the *Tropicale* complained about the toilets. Plaintiffs' toilet was particularly troublesome, and required individual servicing by the crew.

■ Plaintiffs alleged diversity of citizenship as the jurisdictional basis of this suit. Since the complained of injury occurred upon a ship in navigable waters, admiralty jurisdiction is also present and maritime law governs the outcome of the suit. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 408, 3 L.Ed.2d 550 (1959).

■ A ship, as a common carrier, owes a special duty to its passengers.

A contract for passage by water implies something more than ship room and transportation. It includes reasonable comforts, necessaries, and kindness.... It is the duty of the common carrier by water to provide his passengers with comfortable accomodations ... unless there is a contract to the contrary or a fair understanding to the contrary; and the carrier must subject his passengers to no suffering or inconvenience which can be avoided by reasonable care and effort.

*Defrier v. The Nicaragua*, 81 F. 745 (S.D. Ala.1897) (cite omitted); *see Chicago, D. & G.B. Transit Co. v. Moore*, 259 F. 490 (6th Cir.), *cert. denied*, 251 U.S. 553, 40 S.Ct.

118, 64 L.Ed. 411 (1919); *The Oregon*, 133 F. 609, 617–18 (9th Cir.1904). As an aspect of this duty, the ship's agent must tell prospective passengers when the comfortable staterooms have been filled so that they can make an informed decision on whether they wish to travel in the ship's less desirable accommodations. *Sparks v. The Sonora*, 22 F.Cas. 883, 885 (N.D.Cal.1859) (No. 13,212).

■ A breach of the carrier's duty is a "maritime tort." *The Williamette Valley*, 71 F. 712, 714–15 (D.C.Cal.1896); *see The Vueltabajo*, 163 F. 594 (S.D.Ala.1908). A carrier by sea, however, is not liable to passengers as an insurer, but only for its negligence; *Kermarec*, 358 U.S. at 632, 79 S.Ct. at 410; *Liverpool and Great Western Steam Co. v. Phenix Insurance Co.*, 129 U.S. 397, 440, 9 S.Ct. 469, 471, 32 L.Ed. 788 (1889). The Ninth Circuit phrased the issue in a case involving a ship's accommodations as "whether the officers and agents of the vessel were guilty of negligence in overcrowding her with passengers, in failing to keep the vessel in a cleanly condition, and in failing to supply the vessel and the libelants with a sufficient quantity of wholesome food and provisions for the voyage." *The Oregon*, 133 F. at 618.

Carnival attempts to avoid the duties imposed on a carrier by sea relying on certain disclaimers presented in each passenger's contract of passage. These disclaimers read:

4. The Carrier shall not be liable for any loss of life or personal injury or delay whatsoever wheresoever arising and howsoever caused even though the same may have been caused by the negligence or default of its servants or agents. No undertaking or warranty is given or shall be implied respecting the seaworthiness, fitness or condition of the Vessel.

14. If the performance of the proposed voyage is hindered or prevented (or in the opinion of the Carrier or the Master is likely to be hindered or

prevented) by war, hostilities, blockade, ice, labor conflicts, strikes on board or ashore, Restraint of Rules or Princes, breakdown of the Vessel, congestion, docking difficulties, or any other cause whatsoever ... the passenger and his baggage may be landed at the port of embarkation or at any port or place at which the responsibility of the Carrier shall cease and this contract shall be deemed to have been fully performed. . . .

Paragraphs 4 and 14 contain a disclaimer of liability for negligence, a disclaimer of any warranty of seaworthiness, and a disclaimer of liability for interruption of full performance of the cruise. Each disclaimer will be addressed separately.

■ As a general rule, conditions or limitations in a contract for passage are valid if the ticket provides adequate notice of them. *Carpenter v. Klosters Rederi A/S,* 604 F.2d 11, 13 (5th Cir.1979). Many courts have enforced time limitations for bringing of suit and liability limitations for damage to luggage which were printed on passenger tickets. *See* Anno., Federal View as to Effect of Conditions Appearing on Back or Margin of Passenger's Ticket for Ocean Voyage, 5 ALR Fed. 394. Carnival, however, has cited no cases upholding such broad disclaimers as involved in this case.

Of the three disclaimers, the disclaimer of liability for negligence appears to be the most applicable to this suit. Yet, for good reason Carnival does not rely on this disclaimer. 46 U.S.C.A. § 183c expressly invalidates any contract provision purporting to limit a ship's liability for negligence to its passengers.

It shall be unlawful for the manager, agent, master, or owner of any vessel transporting passengers between ports of the United States or between any such port and a foreign port to insert in any rule, regulation, contract, or agreement any provision or limitation (1) purporting, in the event of loss of life or bodily injury arising from the negligence or fault of such owner or his servants, to relieve such owner, master, or agent from liability. . . .

*Id.* Even prior to 1936, the year § 183c was enacted, such provisions were held to be void under common law as against public policy. *Liverpool and Great Western Steam Co. v. Phenix Insurance Co.,* 129 U.S. 397, 441, 9 S.Ct. 469, 471, 32 L.Ed. 788 (1889).

Carnival relies most heavily on the disclaimer of the implied warranty of seaworthiness. This reliance is misplaced for two reasons. First, the disclaimer does not pertain to Carnival's traditional duties as a common carrier. Second, if the disclaimer can be construed as a waiver of Carnival's duties it is void as against public policy.

■ The warranty of seaworthiness is a term of art in the law of admiralty. The warranty imposes a form of absolute liability on a sea vessel. It originally applied to the carriage of cargo and was later extended to cover seamen's injuries. *See generally Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Chamlee, *The Absolute Warranty of Seaworthiness: A History and Comparative Study,* 24 Mercer L.Rev. 519 (1972). A ship's passengers are not covered by the warranty. *Gibboney v. Wright,* 517 F.2d 1054, 1059 (5th Cir.1975). The disclaimer of the warranty of seaworthiness could not reasonably be interpreted as waiving Carnival's duty to provide adequate accommodations to its passengers when the doctrine of seaworthiness does not apply to passengers. Any claim the passenger plaintiffs have can not be based on unseaworthiness, so any waiver of unseaworthiness would be irrelevant.

■ Even if Carnival's disclaimer of the warranty of seaworthiness did extend to its duty to provide adequate accommodations to its passengers, the disclaimer would undoubtedly be void as against public policy. A sea carrier's ability to disclaim its responsibilities is not unlimited. As the Supreme Court stated in *Liverpool and Great Western Steam Co. v. Phenix In-*

*surance Co.*, 129 U.S. 397, 9 S.Ct. 469, 32 L.Ed. 788 (1889):

> [T]he law does not allow a public carrier to abandon altogether his obligations to the public, and to stipulate for exemptions which are unreasonable and improper, amounting to an abnegation of the essential duties of his employment.

129 U.S. at 441, 9 S.Ct. at 472. *See also The Oregon*, 133 F. at 630 (sea carrier cannot avoid liability for its duty to keep ship clean); *Lawlor v. Incres Nassau Steamship Line*, 161 F.Supp. 764, 767 (D.Mass.1958) (ship which contracts to take passengers on a cruise which stops in various foreign ports cannot disclaim duty to provide safe shuttle service into the ports because such service is an essential part of the voyage).

It should be beyond debate that provision of an adequate sanitary system on a passenger boat is an "essential function" for which a sea carrier cannot disclaim responsibility.

Moreover the act complained of here, a failure to warn, involves negligent conduct and thus under § 183c cannot be avoided by contract. In a recent maritime case, this Court discussed whether the law of warranty covers the duty of a manufacturer to warn a purchaser of defects in a product.

> Whatever the merits of adopting a rule that views defects in a product as part of the parties' bargain and thus within the law of sales, it is much less tenable to presume that the buyer has bargained away the manufacturer's obligation to warn of defects that later come to the manufacturer's attention. A duty to warn of a product's defects of which the seller becomes aware goes not to the quality of the product that the buyer expects from the bargain, but to the type of conduct which tort law governs as a matter of social and public policy.

*Miller Industries v. Caterpillar Tractor Co.*, 733 F.2d 813, 818 (11th Cir.1984). *See* W. Prosser, *Law of Torts* § 92 (4th ed. 1971); *cf. Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 94–95, 66 S.Ct. 872, 877–878,

90 L.Ed. 1099 (1946) (duty of shipowner to provide seaworthy ship is not created by contract). Although *Miller Industries* involved the law of sales, the principle discussed there would seem to apply with equal force to this case.

The third disclaimer which releases Carnival from its obligation to perform the voyage is clearly not directed at the carrier's duty to provide adequate accommodations. For this reason, we need not address the enforceability of this disclaimer.

Since none of Carnival's three disclaimers apply in this case, the district court erred in granting summary judgment to Carnival. .

### Denial of Class Action

 A federal district court in Pennsylvania, where the action was originally filed, granted a motion for class certification, subject to decertification pending discovery. The case was transferred to the Southern District of Florida on a motion for change of venue. The district court there granted a motion for decertification of the class action on the grounds that it failed to meet Rule 23(a)'s "numerosity" and "typicality" requirements. Fed.R. Civ.P. 23(a)(1) & (2). That decision must be upheld unless it constituted an abuse of discretion. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038–39 (5th Cir. 1981).

As to numerosity, the district court found that only 30 passengers had complied with the contract provision requiring notice of a claim to be filed within 185 days. Although plaintiff's class action suit was instituted within that period, the district court held that since plaintiffs had no authorization from the other passengers the suit did not operate as notice for these passengers.

 The filing of a class action, however, commences the suit for the entire class for the purpose of the statute of limitations whether or not each member of the class is cognizant of the action. *American Pipe & Construction Co. v. Utah*, 414

U.S. 538, 550–51, 94 S.Ct. 756, 764–65, 38 L.Ed.2d 713 (1974). There is no essential difference between contractural and statutory limitations. Plaintiffs satisfied the numerosity requirement. *Contra Anschul v. Sitmar Cruises, Inc.,* 67 F.R.D. 455, 456 (N.D.Ill.1974), *appeal dismissed on other grounds,* 544 F.2d 1364 (7th Cir.), *cert. denied,* 429 U.S. 907, 97 S.Ct. 272, 50 L.Ed.2d 189 (1976), where in a similar situation a district court without explanation distinguished *American Pipe.*

The district court ruled that plaintiffs were not typical of the class because they were more affected by the toilet malfunction than the other passengers. The court noted that plaintiffs' toilet had to be specially worked on and that a large percentage of the passengers failed to complain about the toilets on a questionaire distributed by Carnival. The court thought the questionaire of particular importance because it revealed that a great many of the passengers had enjoyed the cruise. Reasoning that most of the class had accepted the benefits of the cruise, the court held that this prevented class action treatment.

A class representative's claims or defenses must be typical of the claims or defenses of the class. Fed.R.Civ.P. 23(a)(3). In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class. *Edmondson v. Simon,* 86 F.R.D. 375, 380–81 (N.D.Ill.1980); *Senter v. General Motors Corp.,* 532 F.2d 511, 525 n. 31 (6th Cir.1976), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 23.06–2 at 191–92 (2d ed. 1982); 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1764 (1972).

Judged by this standard, plaintiffs clearly present claims typical of the class. The cause of action arises from a single event and there is no variation in legal theory. That plaintiffs may have suffered greater damage than other passengers because of the severity of the problem with their toilet does not render them atypical. Differences in the amount of damages between the class representative and other class members does not affect typicality. *Ouellette v. International Paper Co.,* 86 F.R.D. 476, 480 (D.Vt.1980). That Carnival may have a stronger defense against many passengers does not render plaintiffs atypical. Plaintiff's claim and Carnival's defenses against that claim are not markedly different than the claims of the rest of the class. *See Irving Trust Co. v. Nationwide Leisure Corp.,* 93 F.R.D. 102, 107 (S.D.N.Y.1981) (class action by tourists against travel company for hotel switching).

The district court's examination of Carnival's questionnaires may indicate that the class is presently too broadly defined. Some of the passengers may not have been affected by the toilet breakdowns. This, however, simply requires that the class be limited. An acceptance of the benefits by a portion of a class only makes class action treatment inappropriate when the class cannot be divided and thus persons with antagonistic interests would have their rights decided by a single proceeding. *See Crawford v. Texaco,* 40 F.R.D. 381, 385 (S.D.N.Y.1966).

The district court's orders decertifying the class action and denying class action are vacated and remanded. On remand, the court should determine whether plaintiffs have met the other requirements for a class action listed in Rule 23. *See Long v. Sapp,* 502 F.2d 34, 43 (5th Cir.1974).

REVERSED in part; VACATED in part and REMANDED.