[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13367

_____

In Re: 1:09-md-02036-JLK

CHECKING ACCOUNT OVERDRAFT LITIGATION

_____

MICHAEL DASHER, 1:10-cv-22190-JLK

Plaintiff-Appellee,

STEPHANIE AVERY,

Interested Party-Appellant,

*versus*

RBC BANK (USA),
d.b.a. RBC Bank,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket Nos. 1:09-md-02036-JLK,
1:10-cv-22190-JLK

————————————

Before JORDAN, NEWSOM, Circuit Judges, and BURKE,* District Judge.

BURKE, District Judge:

Stephanie Avery appeals the district court's certification of a class and the approval of a settlement with PNC Bank. Avery contends that the court abused its discretion by finding that the settlement class's representative, Michael Dasher, adequately represented her (and her proposed subclass's) interests and that the settlement class's claims were typical of hers (and her proposed subclass's). After careful review, and with the benefit of oral argument, we affirm the district court's rulings.

I.    Background

This matter is the latest appeal spurred from RBC Bank's alleged improper assessment and collection of overdraft fees. This practice, known as "high-to-low posting," occurs when financial

————————————

* The Honorable Liles C. Burke, United States District Judge for the Northern District of Alabama, sitting by designation.

institutions restructure their customers' debit transactions by placing more costly transactions on their accounts before less costly ones. Restructuring transactions this way makes it more likely that a customer's account balance will drop below $0.00 so that the financial institution can charge overdraft fees against every transaction posted after the account balance drops to nothing. Avery is one of several thousand customers allegedly harmed by RBC's scheme.

Dasher and Avery's consolidated class actions are before this Court following settlement and class certification in the District Court for the Southern District of Florida. Dasher filed his action in that court on July 2, 2010. Avery filed in North Carolina state court one week later. The cases were consolidated into MDL 2036 in the Southern District of Florida in 2010 and 2011, respectively.

This Court has twice decided matters concerning Dasher's class action due to its factual peculiarities. This matter is now before the Court a third time. Back in 2008, Dasher was simply an RBC customer. His account agreement with RBC—at that time— contained an arbitration clause that covered overdraft fee disputes. *See Dasher v. RBC Bank (USA)* (*Dasher I*), 645 F.3d 1111, 1113–14 (11th Cir. 2014). However, when RBC merged with PNC Bank in 2012–and after Dasher had filed suit against RBC– PNC issued Dasher a new account agreement that didn't contain an arbitration clause. *Id.* at 1114.

PNC moved to compel Dasher to arbitrate his claims after it merged with RBC. The district court denied that motion in 2013. Almost immediately after the district court issued that ruling, PNC issued its customers an amended agreement that contained an arbitration provision. *See Dasher v. RBC Bank (USA)* (*Dasher II*), 882 F.3d 1017, 1019 (11th Cir. 2018). Those provisions took effect on February 1, 2013. *Id.* That agreement also provided that account holders accepted the new terms if they failed to opt-out and continued using their accounts. *Id.*

In February 2014, this Court held that the 2012 PNC agreement without an arbitration clause superseded the 2008 RBC agreement that had required Dasher and plaintiffs like him to arbitrate his claims. *Dasher I*, 645 F.3d at 1127. Nine months after that decision, PNC moved to compel Dasher to arbitrate his claims based on the February 2013 amended agreement. *See Dasher II*, 882 F.3d at 1020. The district court denied that motion. In February of 2018, this Court affirmed the district court's denial concluding there was no meeting of the minds between Dasher and PNC on the February 2013 amended customer agreement. This was because PNC communicated the amendment directly to Dasher while he was represented by counsel and actively engaged in litigation against PNC "forcefully and consistently resisting arbitration." *Dasher II*, 882 F.3d at 1021.

By 2014, class counsel recognized that some plaintiffs would likely be subject to the February 2013 arbitration clause and class-action waiver. Customers who held RBC accounts that

were converted into PNC accounts but closed their accounts before February 1, 2013, likely couldn't be compelled to arbitrate given *Dasher I*'s reasoning. Customers who kept their accounts after February 1, 2013, likely could be compelled to arbitrate. So, plaintiffs' amended complaint proposed subclasses based on the likelihood that members of each subclass could be compelled to arbitrate. The proposed "Avery National Class" would include RBC customers who incurred allegedly improper overdraft fees, became PNC customers, and closed their accounts before February 1, 2013. The proposed "Dasher National Class" would include the customers whose accounts remained open after February 1, 2013. According to plaintiffs' expert, the "Avery class" would include about 17,412 class members, while the "Dasher class" would include the remainder of the 152,000 accounts that were affected by RBC's overdraft practices.

Settlement discussions began in 2018; Dasher's counsel was lead counsel. The district court preliminarily approved a settlement agreement certifying a single settlement class. The court granted conditional certification in accordance with Rule 23(b), finding that "based on the record before [it], the predominance requirement [was] satisfied here for settlement purposes because common questions present[ed] a significant aspect of the case and [could] be resolved for all Settlement Class members in a single common judgment." The class would include "[a]ll holders of an RBC Account who, from October 10, 2007 through March 1, 2012, incurred one or more overdraft fees as a result of RBC's

High-to-Low Posting." PNC would pay $7.5 million in exchange for plaintiffs' release of all claims. Class members would receive a pro rata distribution based on the number of overdraft fees charged due to high-to-low posting. Dasher was the proposed class representative. Avery was not a party to the settlement agreement.

Avery objected to the settlement and class certification in accordance with Federal Rule of Civil Procedure 23(a). She argued that (1) the putative Avery subclass hadn't been "adequately and fairly represented as required by Rule 23(a)(4)" because their interests, as plaintiffs not subject to arbitration or a class-action waiver, were opposed to the Dasher subclass's interests; and (2) Dasher did not meet Rule 23(a)(3)'s typicality requirement.

The district court overruled Avery's objections, certified a Rule 23(b)(3) class, and granted final approval to the settlement. The court reasoned that no typicality or adequacy problem existed after RBC "waive[d] its arbitration defense for settlement purposes." On typicality, the court found that "everyone was subjected to the same practice and suffered the same type of injury," and typicality "does not require identical claims or defenses." On adequacy, the court found that Dasher's interests were "coextensive with" the settlement class's interests, and that *only* a "fundamental conflict" between the "economic interests and objectives" of the class representatives and the unnamed class members would defeat adequacy.

II.    Standard of Review

This Court reviews a district court's class-certification rulings and settlement approvals for abuse of discretion. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d at 1273, 1275 (11th Cir. 2021). "[W]hether, in reviewing the record de novo, we would certify the class is of no consequence." *Hines v. Widnall*, 334 F.3d 1253, 1257 (11th Cir. 2003) (citing *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1374 (11th Cir. 1984)). The district court is permitted a "range of choice" when determining the appropriateness of certification. *Hines*, 334 F.3d at 1257. And as long the district court didn't apply an incorrect legal standard, follow improper procedures when reaching its decision, or make clearly erroneous findings of fact, this Court won't find an abuse of discretion. *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1251 n.2 (11th Cir. 2020) (quoting *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282 (11th Cir. 2011)).

III.    Discussion

Rule 23 sets forth several requirements that a class action must meet prior to certification. "First, all four requirements in Rule 23(a) must be satisfied[.]" *In re Equifax*, 999 F.3d at 1274. Those requirements are: (1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of

the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). *See id.*

To satisfy Rule 23(a)(3)'s typicality requirement, there must be a "nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* Typicality "does not require identical claims or defenses," and factual variations will render a class representative's claim atypical only if the representative's position differs "markedly" from other class members. *Id.* Neither a difference in the amount of damages suffered by the class representative and class members nor the fact that the defendant may have a stronger defense against some class members renders a class representative atypical. *Id.* Rather, the named plaintiffs' claims must share "the same essential characteristics as the claims of the class at large." *Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004).

When assessing the adequacy requirement captured in Fed. R. Civ. P. 23(a)(4), we must ask: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representative will adequately prosecute the action." *Equifax*, 999 F.3d at 1275 (quoting *Valley Drug Co. v. Geneva Pharms., LLC*, 350 F.3d 1181, 1189 (11th Cir. 2003)).

A class action must satisfy one of Rule 23(b)'s three parts. *Id.* at 1275. For purposes of this action, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

A fundamental conflict precluding class certification exists "where some party members claim to have been harmed by the same conduct that benefitted other members of the class," where "class members have opposing interests[,] or where the economic interests and objectives of the named representatives differ significantly from the economic interests and objectives of unnamed class members." *Equifax*, 999 F.3d at 1275 (cleaned up). This Court has found no fundamental conflict of interest precluding certification where the plaintiffs' claims arose out of the same unifying event and each sought redress for the same type of injury, some claim variations notwithstanding. *Id.* at 1275–76.

### A. RBC's arbitration waiver didn't cure the adequacy or typicality issues presented.

The district court found, and Dasher contends, that Rule 23's adequacy and typicality requirements were met because RBC waived its right to arbitrate. The argument is that because RBC didn't assert an arbitration defense to settle the case, the differences among the plaintiffs concerning the applicability of that defense are moot. We're unpersuaded.

A court assessing the adequacy of class representation must determine whether an intra-class conflict existed prior to and independent of the settlement agreement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (holding that Rule 23(a)(4)'s adequacy inquiry requires a "structural assurance of fair and adequate representation" when class members have conflicts of interest). If subgroups have adverse interests, "the members of each cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." *Id.* (quoting *In re Joint E. and S. Dist. Asbestos Litig.*, 982 F.2d 721, 742–43 (2d Cir. 1992)). In a later case, the Court repeatedly cited *Amchem* and held that conflicts of interest among class members cannot be ignored even if "the settlement makes no disparate allocation of resources as between the conflicting classes." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 858 (1999). Such is the case here with respect to the approved settlement.

RBC's waiver of its arbitration defense for settlement purposes didn't cure the conflicts that may have existed among class members before they sat down to negotiate. As noted throughout this opinion, the Avery subclass contended–regardless of that conditional waiver–that a fundamental conflict remained due to the valuations of their respective claims as opposed to the Dasher subclasses' claims.

B. The district court didn't abuse its discretion: it's not clear that the proposed subclasses have a fundamental conflict related to the specific issues in controversy.

Avery and her subclass contend that a fundamental conflict existed between the Dasher and Avery subclasses because the Avery subclass's claims were worth more as they weren't subject to an arbitration defense and class-action waiver, while Dasher's were. Two cases seem to support Avery's inadequate representation position.

In *Amchem*, the Court found class certification in accordance with Rule 23(b)(3) inappropriate because the class plaintiffs had suffered different injuries. The class included members who'd already suffered asbestos-related injuries *and* those who were merely exposed to it and were awaiting the consequences of that exposure. The Court found this difference constituted a fundamental conflict because the plaintiffs suffered diametrically different injuries which demanded different compensation structures: some plaintiffs wanted immediate compensation while others wanted payment in the future. *Amchem,* 521 U.S. at 626.

The Court found the class in the second case, *Ortiz*, suffered from the same defect plaguing the *Amchem* class: they hadn't received adequate representation because the class was composed of plaintiffs who'd already suffered asbestos-related injuries and those who were awaiting the consequences of their exposure. *Ortiz*, 527 U.S. at 856. Thus, their different injuries creat-

ed a conflict over whether to prioritize "generous immediate payments" (as the currently injured wanted) or "an ample, inflation-protected fund for the future" (as the exposure-only plaintiffs wanted). *Id.* (quoting *Amchem*, 521 U.S. at 626). *Id.* The *Ortiz* Court also found it significant that some plaintiffs had more valuable claims than others based on the availability of insurance proceeds. *Id.* at 857.

While *Amchem* and *Ortiz* lend some support to Avery's position, they don't demand a finding that the district court abused its discretion. This is so for two reasons.

First, the Dasher and Avery classes suffered identical injuries: they allege harm based on RBC's alleged high-to-low restructuring practices. And both seek compensation based on those injuries. Thus, unlike the *Ortiz* and *Amchem* classes, the Dasher and Avery classes haven't suffered different injuries and don't seek redress for those different injuries. *See Equifax*, 999 F.3d at 1277.

Second, we aren't convinced that *Amchem* or *Ortiz* created a bright-line rule requiring separate representation in all cases where claims have different likely settlement values. Instead, it appears–particularly in *Ortiz*–that the Court's analysis was fact-intensive. This is supported by the Court's decision that decertification was appropriate based on "[those] two instances of conflict" present in that case. *Ortiz* 527 U.S. at 857. Without a clear rule on this matter, we won't conclude that the district court ap-

plied an incorrect legal standard. *See Johnson*, 975 F.3d at 1251 n.2.

Considering the district court didn't commit legal error, we must determine whether its decision to certify a single class was within its permissible "range of choice." *Hines*, 334 F.3d at 1257. It was. The district court could reasonably conclude that any difference in the value of the plaintiffs' claims was too speculative or too small to create a fundamental conflict of interest. The district court endorsed another court's reasoning that "any assessment of how the lack of mandatory arbitration might influence a different settlement in this or any other case is unduly speculative."  The court further questioned whether "RBC would have settled with some but not all of the RBC Account Holders."

Unlike *Ortiz*, where the Court could be certain that the defendant's insurance expired in 1959—rendering some claims more valuable than others—the factors cited by the district court lead to more uncertainty about whether and to what extent some plaintiffs' claims were more valuable than others. Even if we assume, as Avery has argued, that class actions where arbitration isn't invoked settle, on average, for 46% of damages compared to 20% where arbitration is invoked, the court could reasonably find that the likely difference in value in this case insufficient to create a fundamental conflict. And, as other cases show, litigants like Avery who are arguably not subject to an arbitration provision are willing to settle for much less than 46% of damages sustained.

*See In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1336, 1346, 1348 (S.D. Fla. 2011).

In sum, the district court didn't abuse its discretion by finding that single-class representation was fair and adequate. There's enough uncertainty about the difference in the value of the plaintiffs' claims that the district court could find dispositive the fact that the plaintiffs were all injured in the same way by the same conduct and had an overriding shared interest in obtaining the largest cash settlement possible.

### C. The district court didn't abuse its discretion by finding Dasher's claims were typical of those of the class.

Avery contends that Dasher lacks the typicality needed for Rule 23(a)(3) because he has a unique defense to arbitration: he's not subject to PNC's 2013 amended agreement, so he can't be compelled to arbitrate and lacks standing to assert defenses to arbitration on behalf of class members who'd be subject to the 2013 amendment. We disagree.

This Court broadly construes Rule 23(a)(3)'s typicality requirement. And, in accordance with that broad construction, we can't conclude that the district court abused its discretion. Dasher, like all class members, was "subjected to the same practice and suffered the same type of injury": RBC's high-to-low posting resulting in excessive overdraft fees. Thus, Dasher's claims arise from the same "pattern or practice" and are based on the same legal theory as the rest of the class. *Kornberg*, 741 F.2d at 1337.

20-13367          Opinion of the Court          15

Even if an arbitration defense would be dispositive as to most class members if they attempted to sue individually, there is still a "sufficient nexus" under *Kornberg* between Dasher's claims and the class's claims to render Dasher typical under Rule 23(a)(3).[1]

    **AFFIRMED.**

---

[1] The district court approved a $10,000 incentive award for Dasher. Although this Court held in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), that such awards are unlawful, Avery neither objected to Dasher's award before the district court nor properly presented to us any argument that Dasher's award was invalid. Accordingly, we decline to vacate the award. *See United States v. Willis*, 649 F.3d 1248, 1254 (11th Cir. 2011) ("A party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. . . . Where a party fails to abide by this simple requirement, he has waived his right to have the court consider that argument.").