**WILMINGTON SAVINGS FUND SOCIETY, FSB, Plaintiff,**

v.

**BUSINESS LAW GROUP, P.A., LM Funding, LLC and Bruce Rodgers, Defendants.**

**Case No: 8:15–cv–2831–T–36TGW**

United States District Court, M.D. Florida, Tampa Division.

Signed 02/22/2017

Kenneth G. Turkel, Esq. and Brad F. Barrios, Esq., Bajo, Cuva, Cohen, Turkel, J. Daniel Clark, Esq. and Matthew A. Crist, Esq., Clark & Martino, P.A., for Plaintiff.

Charles M. Harris, Jr., Esq., John D. Goldsmith, Esq., William A. McBride, Esq., Ste-

phanie S. Leuthauser, Esq., Trenam Law, for Defendants.

## ORDER

Charlene Edwards Honeywell, United States District Judge

This matter comes before the Court upon Plaintiff Wilmington Savings Fund Society, FSB's ("Wilmington"), individually and on behalf of all those similarly situated, Motion for Class Certification [1] (Doc. 32) to which Defendants Business Law Group, P.A. ("BLG"), LM Funding, LLC ("LMF"), and Bruce Rodgers (collectively "the Defendants") filed a Response in Opposition (Doc. 39). In the motion, Plaintiff contends that class certification should be granted because the requirements of Federal Rule of Civil Procedure 23 have been met. The Court, having considered oral arguments, the parties' submissions, and being fully advised in the premises will deny the motion.

## I. BACKGROUND

This case centers on Defendants' alleged practice of sending deceptive estoppel certificates that charge amounts in excess of the "safe harbor" limitations [2] in violation of Florida law.

The following background is taken from the Complaint (Doc. 2) and/or the Motion for Certification (Doc. 32).

1. Wilmington moves for class certification under Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure and Rule 4.04 of the Local Rules for the Middle District of Florida. See Doc. 32 pg. 1.

2. Certain residential communities in Florida require membership in a condominium association ("Condo Association") or a homeowners association ("HOA") (collectively, "Associations") as a condition to owning a community unit. These Associations are heavily regulated under Florida law. See Florida Statutes Chapter 718 (Condo Associations) and Chapter 720 (HOAs). Members pay regular assessments to the Association. A new unit owner, regardless of how it acquires title, is jointly and severally liable with the previous owner for all unpaid assessments that came due up to the time of transfer of title. See Fla. Stat. § 718.116(1)(a). However, the Condo and HOA Statutes limit a first mortgagee's, or its successor's or assignee's, liability for such unpaid assessments to an amount known as the

*Defendants and their Alleged Deceptive and Unfair Business Practices*

LMF contracts with Associations who have unpaid assessments due from their unit owners. See Doc. 2 ¶ 7. In exchange for payment, the Association assigns its right to pursue collection efforts against the delinquent owner and subsequent owners to LMF and authorizes LMF to retain BLG, a law firm, to conduct the debt collection. See id. ¶¶ 7, 40–41. Defendants routinely misrepresent in their estoppel certificates to first mortgagees that they are responsible for all of the previous unit owner's unpaid assessments, interest, and late charges, plus the Association's (i.e., BLG's) costs and attorneys' fees in collecting these amounts in disregard of the safe harbor provisions. See id. ¶¶ 44, 62–63.

*Plaintiff's Business and its Alleged Interactions with Defendants*

*Solaire Unit1308*

Plaintiff purchases distressed properties either in default or foreclosure. See Doc. 2 ¶ 67; Doc. 32–11 at ¶ 8. On August 28, 2014, Wilmington obtained a Final Judgment of Foreclosure against numerous defendants, including Solaire at the Plaza Condominium Association, Inc. ("Solaire"), an LMF client. See Doc. 2 ¶¶ 69 and 74; Doc. 32–1 at ¶ 10. The original mortgage debt on the foreclosed unit was $226,500. See Doc. 2 ¶¶ 69 and 74; Doc. 32–1 at ¶ 11. The unit's unpaid assessments that became due during the 12 months

"safe harbor." Under the "safe harbor" provisions of both statutes, when a first mortgagee (1) brings a foreclosure case against a unit owner, (2) joins the Association as a defendant, and (3) acquires title by foreclosure or a deed in lieu of foreclosure, its liability for unpaid assessments is limited to the lesser of the following: (a) the unit's unpaid common expenses and regular periodic assessments which accrued or came due during the 12 months before the acquisition of title, or (b) one percent of the original mortgage debt. See Fla. Stat. §§ 718.116(1)(b)(1) (the "Condo Statute") and 720.3085(2)(c) (the "HOA Statute"). Under Sections 718.116(8) and 720.30851, upon request and within 15 days, an Association must provide an estoppel certificate identifying the amounts owed by the unit owner, i.e., the first mortgagee, with respect to the property. The Association may charge a reasonable fee for the preparation of the certificate, which must be included on the certificate. See Fla. Stat. § 718.116(8)(c).

before the foreclosure were $4,262.88. *See* Doc. 2 at ¶ 73; Doc. 32–1 at ¶ 12. Wilmington's liability to Solaire was only $2,265. *See* Doc. 2 at ¶ 74; Doc. 32–1 at ¶ 13. On November 19, 2014, BLG sent Plaintiff an estoppel certificate demanding payment of $31,131.55 for unpaid assessments, finance charges, late fees, legal fees, lien costs, underwriting, prior attorneys' fees, accelerated assessments, and other costs. *See* Doc. 2 at ¶ 75; Doc. 32–1 at ¶¶ 14–15. In response, after Plaintiff's multiple requests for a lawful estoppel certificate with the correct "safe harbor" amount, on January 17, 2015, BLG sent another estoppel certificate demanding $32,623.98, again in excess of the "safe harbor." *See* Doc. 2 at ¶ 77; Doc. 32–1 at ¶ 16. Plaintiff again requested a proper estoppel certificate, but BLG sent an estoppel certificate seeking amounts greater that the "safe harbor." *See* Doc. 2 at ¶ 78; Doc. 32–1 at ¶ 17. On September 16, 2015, BLG demanded $4,981.90, which amount Plaintiff paid on September 29, 2015. *See* Doc. 2 at ¶ 81; Doc. 32–1 at ¶ 18.

*Bermuda Dunes Unit 1111*

Plaintiff obtained a Final Judgment of Foreclosure on another property against multiple defendants including Bermuda Dunes Private Residences Condominium Association, Inc. ("Bermuda Dunes"). *See* Doc. 32–1 at ¶ 19. On August 21, 2015, Plaintiff obtained a Certificate of Title, which was also furnished to Bermuda Dunes through its counsel, BLG. *See id.* at ¶ 20. On August 25, 2015, BLG, on behalf of Bermuda Dunes,

sent an estoppel certificate to Plaintiff's agent seeking $33,912.58, which included accelerated assessments, interest, late fees, legal costs, "other association costs of collection," and a title search. *See id.* at ¶ 21. Plaintiff requested a proper estoppel certificate recognizing its right to the "safe harbor." *See id.* at ¶ 22. On September 29, 2015, BLG sent an updated estoppel certificate to Plaintiff stating that $4,307.33 is due and included charges for assessments, interest, late fees, legal fees, prorated assessments, and the safe harbor amount. *See id.* at ¶ 23. On October 30, 2015, Wilmington paid BLG $4,307.33. *See id.* at ¶ 24.

*The Class*

Plaintiff seeks to certify the following Class under Federal Rule of Civil Procedure 23(b)(2):[3]

> All first mortgagees and their successors or assignees who joined an LMF Association client in a foreclosure action in Florida, obtained title to the property at issue through a foreclosure judgment or deed in lieu of foreclosure, and to whom BLG, on behalf [of] an LMF Association client, provided an estoppel certificate that included charges other than (a) the lesser of the property's unpaid assessments which came due during the 12 months immediately preceding the acquisition of title or one percent of the original mortgage debt, (b) an estoppel preparation fee, and (c) assessments which came due after the first mortgagee's acquisition of title to the property, on or after October 28, 2011 (the "Class").[4]

**3.** Federal Rule of Civil Procedure 23(b), in pertinent part, states that: A class action may be maintained if Rule 23(a) is satisfied and if:

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

**4.** In its Motion, Wilmington states: "The Class definition has been revised and simplified from the definition provided in the Complaint. *See* Doc 2 at ¶ 85. In addition, Plaintiff has added the Damages Subclass for members that have been required to pay in excess of the statutory limit provided by Florida Statutes Chapters 718.116(1)(b)(1) or 720.3085(2)(c), and/or been required to pay such categories of unlawful charges as finance charges, late fees, legal fees,

394

Plaintiff also seeks to certify the following Damages Subclass under Federal Rule of Civil Procedure 23(b)(3):

All Class members who paid BLG more than the sum of (a) the lesser of the property's unpaid assessments which came due during the 12 months immediately preceding the acquisition of title or one percent of the original mortgage debt, (b) an estoppel preparation fee, and (c) assessments which came due after the first mortgagee's acquisition of title to the property, in response to an estoppel certificate sent by BLG on or after October 28, 2011 (the "Damages Subclass").

## II. Legal Standard

■ A district court has broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992); *Griffin v. Carlin*, 755 F.2d 1516, 1531 (11th Cir. 1985). For a district court to certify a class, "the named plaintiff's must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in [Federal Rule of Civil Procedure] 23(b)." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). The party seeking to maintain the class action must affirmatively demonstrate his compliance with Federal Rule of Civil Procedure 23. *See Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). The party must be prepared to prove that there are *"in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation as required by Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (emphasis supplied). As explained in *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003), Federal Rule of Civil Procedure 23 "establishes the legal roadmap courts must follow when determining whether class certification is appropriate." Under Federal Rule of Civil Procedure 23(a), a class may be certified only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

The burden of proof to establish the propriety of class certification rests with the advocate of the class, and failure to establish any one of the four Federal Rule of Civil Procedure 23(a) factors and at least one of the alternative requirements of Federal Rule of Civil Procedure 23(b) precludes class certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

■ This Court must conduct a rigorous analysis of Federal Rule of Civil Procedure 23 prerequisites before certifying a class. *See Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug Co.*, 350 F.3d at 1188, n. 15; *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 and n. 12, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) ("The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action" and "the more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.") (internal citations omitted).

■ Plaintiff seeks certification of its declaratory and injunctive relief claims in Counts I and II under Federal Rule of Civil Procedure 23(b)(2) on behalf of the Class, and its damages and other equitable relief claims in Counts III through VI under Rule 23(b)(3) on behalf of the Damages Subclass.

underwriting, legal costs, lien cost, and other association costs." *See* Doc. 32 pg. 7 n.5.

Under *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1158 n.10 (11th Cir.1983), when damages and injunctive or declaratory relief are sought, a "hybrid" Rule 23(b)(2) and (b)(3) suit may be maintained as long as the case "can be fairly and effectively managed." *See also Williams v. Mohawk Inds.*, 568 F.3d 1350, 1359–60 (11th Cir. 2009)(same).

### III. Discussion

#### A. Plaintiff has Standing

"Prior to the certification of a class and before undertaking any analysis under Federal Rule of Civil Procedure 23, the Court must determine that at least one named class representative has Article III standing to raise each class claim." *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 577 (M.D. Fla. 2006) (citing *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). Under the principles of standing, "a plaintiff must allege and show that he personally suffered injury." *Veal*, 236 F.R.D. at 577 (citing *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987)). Moreover, the Court must determine whether the class representative is "part of the class and possess[es] the same interest and suffer[ed] the same injury as the class members." *Prado–Steiman*, 221 F.3d at 1279 (citations omitted).

Plaintiff and the Class members maintain that they have standing because they were injured as a direct result of Defendants' conduct in sending first mortgagees unlawful, deceptive and unfair estoppel certificates. And Plaintiff and the Damages Subclass members also maintain that they have standing because they were all required to pay unlawful or unnecessary charges, expenses, costs or fees as a result of Defendants' wrongful conduct. During the class certification hearing, Plaintiff's counsel acknowledged that in regards to Unit 1308 (Solaire) they were unable to determine whether there were improper charges by BLG because they did not have the final ledger. *See* Doc. 124 p. 109. However, in regards to Unit 1111 (Bermuda Dunes) the final ledger showed that late fees and legal fees were charged. *See* Doc. 32 at ¶ 23; Doc 124 p.107. As a result, Plaintiff, the Class members and the Damages Subclass members maintain that they have shown injury as a direct result of Defendant's conduct.

Plaintiff, the Class members and the Damages Subclass members further argue that they are able to show redressability. Plaintiff maintains that a favorable decision would (1) declare Defendants' conduct unlawful; (2) enjoin Defendants from continuing to engage in this conduct; and (3) require Defendants to disgorge the amounts that they have received. Plaintiff and the Class members also contend that they possess the same interest, have suffered the same injury, and are members of the same Class to satisfy standing.

Defendants disagree that standing has been satisfied. Defendants point out that Plaintiff's proposed representatives of the class have failed to show injury and/or damages. Particularly, Defendants maintain that Unit 1308 ("Solaire") was "settled" such that Plaintiff paid the safe harbor amount without any of the late fees and/or penalties. Defendants further point out that in regards to Unit 1111 (Bermuda Dunes) the mortgage had an unrecorded assignment and had differences between the different assignees in the chain of title such that first mortgagee status had not been clearly established.

At this stage of the litigation, the Court finds that standing has been established, particularly as to Unit 1111. Indeed, it appears that Plaintiff, the Class members and Damages Subclass members were injured as a direct result of Defendants' alleged conduct. Moreover, it appears that they may have paid unlawful or unnecessary charges, expenses, costs or fees. Defendants' contentions to the contrary are without merit. *See Shamblin v. Obama for Am.*, 8:13–CV–2428–T–33TBM, 2015 WL 1909765, at *12 (M.D. Fla. Apr. 27, 2015) (noting that affirmative defenses do not automatically preclude certification of a class). Because Plaintiff has standing, the Court will next address whether Wilmington has establish that the proposed class is adequately defined and clearly ascertainable.

#### B. Ascertainability of the Proposed Class Has Not Been Satisfied

"Before a district court may grant a motion for class certification, a plain-

tiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (citation omitted). As previously noted, Courts review the merits of individual claims at the class certification stage only to the extent necessary to determine whether the requirements of Federal Rule of Civil Procedure 23 are satisfied. *See Valley Drug*, 350 F.3d at 1188 n. 15. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon County Greyhound Park, Inc.*, 562 Fed.Appx. 782, 787 (11th Cir. 2014) (citation omitted). A class is ascertainable if the Court can determine whether a given person is a class member through administratively feasible methods. *See in Re Checking Account Overdraft Litigation*, 286 F.R.D. 645, 650–651, n.7 (S.D. Fla. 2012). Moreover, "[a] plaintiff seeking class certification bears the burden of satisfying all implicit and explicit requirements of Federal Rule of Civil Procedure 23." *Bussey*, 562 Fed.Appx. at 787.

■■■ Here, Plaintiff contends that the Class and the Damages Subclass have been adequately defined. Plaintiff maintains that since BLG sent all of the estoppel certificates at issue, LMF's and BLG's records can identify—and permit the Court to ascertain—all of the first mortgagees to whom they sent their estoppel certificates that meet these criteria and provide their names and addresses. Therefore, Plaintiff argues that the Class is adequately defined and clearly ascertainable.

In opposition, Defendants contend that the class definition of a first mortgagee is not "administratively ascertainable." Defendants argue that a foreclosure judgment only adjudicates the lien priorities of the parties to the foreclosure action. *See Hecht v. Wilson*, 107 Fla. 421, 424–25, 144 So. 886 (Fla. 1932)(noting that parties claiming title superior to the lien of a mortgage being foreclosed, are not proper parties to the foreclosure suit). Defendants further argue that it is not proper to name a senior lienholder in a mortgage foreclosure action. *See Wells Fargo Bank, N.A. v. Rutledge*, 148 So.3d 533, 535 (Fla. 2d DCA 2014) (noting superior lienholder not a proper party). Defendants maintain that a foreclosure action does not, and cannot, adjudicate whether a proposed member of the class is a first mortgagee, and a review of the foreclosure file provides no information about, or verification of, that status.

Moreover, Defendants point out that in order for a claims administrator to determine whether a proposed class member is a first mortgagee, a title insurer would need to perform a thorough examination of title, including an analysis of the propriety and regularity of the foreclosure proceedings under which the prospective class member obtained the title it claims to hold. Thus, Defendants contend that often first mortgagee status in many cases cannot be ascertained from a review of publicly available real property records and/or the court file for the mortgage foreclosure proceeding. Defendants further argue that a review of Unit 1308's final judgment has no finding that Plaintiff was the holder of the first mortgage on the property. *See* Doc. 2; Ex. B pgs. 82–87.

Additionally, Defendants maintain that Unit 1111 cannot be a member of the class and subclass that it purports to represent. Specifically, Defendants argue that an examination of the foreclosure court file for Unit 1111 reveals that Plaintiff never took valid title and the final judgment of foreclosure, under which Plaintiff purchased it, was void. *See* Doc. 40-1, Ex. A; 40-2, Ex. B (demonstrating that the Unit 1111 foreclosure action had been dismissed by order entered more than one year before Plaintiff's predecessor filed its motion for relief therefrom). Thus, Defendants dispute that Plaintiff took valid title or was the holder of the mortgage in the first instance. *See* Doc. 40-2; Ex. B (excerpts from Plaintiff's foreclosure trial composite exhibit, including affidavit of lost note attesting that original lender SunTrust Mortgage, Inc. assigned the note to USDV Fund, L.P.; recorded corporate assignment of mortgage from SunTrust Mortgage, Inc. to USDV Fund LP; and unrecorded assignment of mortgage from US Debt Ventures Fund, a Delaware Partnership, to Plaintiff). Defendants maintain that administration of such a class would require an individual inquiry into

the circumstances surrounding each potential prospective class member's claim that it obtained title to each property in its capacity as the holder of a first mortgage on the property and the identification of first mortgagee class members would not be administratively feasible. The Court agrees.

Plaintiff has not met its burden to prove that the proposed plaintiff class is administratively ascertainable. As Defendants correctly point out, administration of such a class would require an individual inquiry into the circumstances surrounding each potential prospective class member's claim that it obtained title to each property in its capacity as the holder of a first mortgage on the property. Indeed, "a class should not be certified if the court must engage in individualized determinations of disputed fact in order to ascertain a person's membership in the class." *Bilotta v. Citizens Information Associates, LLC*, No. 8:13-cv-2811-T-30TGW, 2014 WL 2050853, *2 (M.D. Fla. May 19, 2014). Here, the Court would need to engage in individualized determinations regarding whether or not a proposed class member is a first mortgagee. Thus, the proposed class as stated in the Motion is not adequately defined and sufficiently ascertainable for purposes of class certification. Notwithstanding the finding that the proposed class is not adequately defined and sufficiently ascertainable, the Court will address the remaining Federal Rule of Civil Procedure 23 requirements.

### C. Federal Rule of Civil Procedure 23 Prerequisites

#### 1. Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." While "mere allegations of numerosity are insufficient," Federal Rule of Civil Procedure 23(a)(1) imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013); *see Vega v. T–Mobile USA, Inc.*, 564 F.3d at 1267; *Evans v. United States Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983) (explaining that the class representa-

tive is not required to establish the exact number in the proposed class). "Nevertheless, a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding that the class actually certified meets the numerosity requirement." *Manno*, 289 F.R.D. at 684.

Although mere numbers are not dispositive, the Eleventh Circuit has indicated that less than twenty-one class plaintiffs is inadequate, and more than forty class plaintiffs is generally enough to satisfy the rule. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). The Court may also consider factors such as "the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits." *Walco Inv., Inc. v. Thenen*, 168 F.R.D. 315, 324 (S.D. Fla.1996).

Here, Defendants do not challenge numerosity. Indeed, Joshua Donham's Declaration, filed in support of Defendant's removal, states that at least 791 properties fit the Class definition. *See* Doc. 29 at ¶ 7. Accordingly, the numerosity requirement of Rule 23(a)(1) is clearly satisfied.

#### 2. Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." "Commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Piazza v. Ebsco Indus. Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (citing *Prado–Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). Commonality "does not require complete identity of legal claims." *Johnson v. Am. Credit Co. of Ga.*, 581 F.2d 526, 532 (5th Cir. 1978). In fact, commonality can be satisfied even with some factual variations among class members. *See Armstead v. Pingree*, 629 F.Supp. 273, 280 (M.D. Fla. 1986). In *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), the Supreme Court clari-

fied the commonality requirement for class certification by specifically rejecting the use of generalized questions to establish commonality. Noting that "any competently crafted class complaint literally raises common questions," the Court further noted that "what matters to class certification ... is not the raising of common questions... but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 349, 350, 131 S.Ct. 2541 (emphasis in original) (internal quotation marks and citation omitted). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 350, 131 S.Ct. 2541. The court explained that the "common contention" underpinning a finding of Rule 23(a) (2) commonality "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart,* 564 U.S. at 350, 131 S.Ct. 2541.

■■■ Plaintiff contends that the claims of Plaintiff and the Class contemplate common questions of law and fact and, as such, that liability against Defendants on all of Plaintiff's claims will be established. *See* Doc. 2 at ¶ 90(a)-(e). Plaintiff's claims are based on Defendants' routine practice of sending deceptive estoppel certificates that demand amounts beyond the "safe harbor" limitations to which they are not entitled (including unpaid assessments, finance charges, late fees, legal fees, lien costs, underwriting, prior attorneys' fees, accelerated assessments, and other costs). Plaintiff further argues that these common issues are central to the case and their centrality and commonality support the policy objectives behind class certification. Plaintiff maintains that if the Court determines that Defendants' conduct violates Florida law, Plaintiff and the members of the Class would be entitled to, among other things, declaratory relief, injunctive relief, and damages. Ultimately, Plaintiff alleges that because the members of the Class have these factual and legal issues in common, Plaintiff has demonstrated commonality. *See Klewinowski v. MFP, Inc.,* No. 8:13-cv-1204-T-33TBM, 2013 WL 5177865, *3 (M.D. Fla.

Sept. 12, 2013) (finding commonality because Defendant issued standardized debt collection letters to each member of the putative class in violation of the FDCPA).

In opposition, Defendants dispute that Plaintiff has established commonality. Defendants maintain that the underlying premise for each of Plaintiff's claims is that Defendants provided improper estoppel certificates which would necessarily require individualized determinations with each instance being subject to individualized defenses. Defendants argue that each member of the proposed class is inherently differently situated, because each potential class member had to have submitted to BLG a request for an estoppel certificate before any certificate would have been issued. Defendants maintain that the attached declaration of Joshua Donham, filed contemporaneously in opposition to class certification, demonstrates how requests for estoppel certificates from potential prospective plaintiff class members can vary. *See* Doc. 41–7 at ¶ 8; Ex. B. For instance, some ask only whether the property "is in collection" (Doc. 41–7 pgs. 1, 8, 18; questions 1, 5, 8); one specifically claims to be a first mortgagee who acquired the property pursuant to a foreclosure sale and requests an estoppel consistent with the safe harbor provisions (Doc. 41–7 pgs. 22, 27; question 11); another requests an estoppel in connection with a closing (Doc. 41–7 pg. 6; question 3); another mentions a bank and/or mortgage company but does not state that the property was acquired in foreclosure or claim entitlement to first mortgagee safe harbor provisions (Doc. 41–7 pg. 31; question 13); some are from a title company and do not mention a bank, foreclosure or safe harbor entitlement (Doc. 41–7 pgs. 6, 12, 17, 21; questions 3, 6, 7, 10); others mention the safe harbor provisions but do not provide support for entitlement to its protection (Doc. 41–7 pgs. 2, 22, 27, 29; questions 2, 11, 12); and others only ask for a payoff (Doc. 41–7 pgs. 12, 17, 19, 21, 33; questions 6, 7, 9, 10 and 14). Thus, Defendants maintain that the requests as shown may or may not have even identified the request as coming from one claiming first mortgagee status, much less provided anything to substantiate that status. As such,

Defendants argue the Plaintiff has not met its burden to show commonality under Federal Rule of Civil Procedure 23.

The Court is mindful of the Supreme Court's decree that, "[f]or purposes of [Federal Rule Civil Procedure] 23(a)(2), even a single common question will do." *Wal–Mart Stores, Inc.*, 564 U.S. at 359, 131 S.Ct. 2541. Nonetheless, based on the current record, Plaintiff's ability to list some common questions does not satisfy commonality. Moreover, Plaintiff's reliance on *Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 350 (S.D. Ga. 1996) is misplaced because the analysis in this unique case is not that simple. As previously noted, under Federal Rule of Civil Procedure 23(a)(2), commonality "must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc.*, 564 U.S. at 350, 131 S.Ct. 2541. Here, the individualized proof required for each and every plaintiff to reach a resolution undermines commonality for liability and damages. As such, Plaintiff has failed to satisfy the commonality requirement of Federal Rule of Civil Procedure 23(a)(2).

### 3. Typicality

Class certification also requires that the claims of the class representatives be typical of those of the class. *See* Federal Rule of Civil Procedure 23(a)(3). In order to establish typicality, "there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.*

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Moreover, "if proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the class representatives' claims are not typical of the proposed members' claims." *Brooks v. S. Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D. Fla. 1990) (citation omitted). "Typicality, however, does not require identical claims or defenses." *Kornberg*, 741 F.2d at 1337. "A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Id.*

Plaintiff contends that since each member of the class suffered the same injury in the same way, there is a "sufficient nexus" between their claims. Plaintiff further maintains that if the same unlawful conduct was directed at or affected both the class representatives and the class itself, the typicality requirement is usually met irrespective of varying fact patterns which underline the individual claims. *See Davis v. Southern Bell Tel. & Tel. Co.*, 1993 WL 593999, *5–6 (S.D. Fla. Dec. 23, 1993) (noting all representatives paid monopolistic prices).

In opposition, Defendants contend that Plaintiff has not met its burden to establish that the claims or defenses of the representative parties are typical of the claims or defenses of the class. Defendants maintain that even assuming that Plaintiff otherwise could establish sufficient similarity generally between its dealings with Defendants and others' dealings with Defendants, Plaintiff's individual claims are so weak that they are subject to summary disposition on the undisputed facts.

The Court finds that the typicality requirement has been satisfied. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 133 S.Ct. 1184, 1194–95, 185 L.Ed.2d 308 (2013) (citation omitted). It may well be that Plaintiff's individual claims are subject to summary disposition on the undisputed facts in the future, at this juncture, the typicality requirement has been satisfied.

#### 4. Adequacy of Representation

The final requirement for class certification under Federal Rule of Civil Procedure 23(a) (4) is adequate representation. "Adequacy of representation means that the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d at 1346.

Here, Defendants do not challenge the adequacy of representation. Wilmington's counsel has indicated a commitment to the vigorous prosecution of this action and willingness to represent the interests of the class with knowledge and skill necessary to such efforts. *See* Doc. 32–3; Ex. 3 (attorneys' declarations). Accordingly, the adequacy requirement of Rule 23(a)(4) has been satisfied.

### D. Federal Rule of Civil Procedure 23(b) Requirements

A party seeking to maintain a class action must "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)" but in addition, the "party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (internal quotation marks and citation omitted). The Supreme Court has emphasized that it "may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 1432 (internal quotation marks and citation omitted). Such an analysis will frequently entail "overlap with the merits of the plaintiff's underlying claim." *Wal–Mart*, 564 U.S. at 351, 131 S.Ct. 2541. "That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 133 S.Ct. at 1432 (internal quotation marks and citation omitted). The same analytical principles govern

certification under both Rule 23(a) and Rule 23(b). *See id.* at 1432. In their Motion for Class Certification, Wilmington seeks certification under Federal Rules of Civil Procedure 23(b)(2) and (3).

#### 1. Federal Rule of Civil Procedure 23(b)(2)

Federal Rule of Civil Procedure 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "A hybrid [Federal Rule of Civil Procedure] 23(b)(2) class action is one in which class members seek individual monetary relief ... in addition to class-wide injunctive or declaratory relief." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d at 1554. Monetary damages are "legal relief that can only be awarded in a Rule 23(b)(2) class action when the damages sought are incidental to the claims for equitable and declaratory relief." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1359 (11th Cir. 2009) (citing *Cooper v. Southern Co.*, 390 F.3d 695, 720 (11th Cir.2004) (internal quotation marks omitted)). "The advisory committee's note to Rule 23 explains that certification under section (b)(2) is not proper in cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Williams v. Mohawk Indus., Inc.*, 568 F.3d at 1359 (internal citation omitted) (quoting Fed.R.Civ.P. 23(b)(2), advisory committee's note).

Plaintiff seeks certification for its declaratory and injunctive relief claims in Counts I and II under Rule 23(b)(2) on behalf of the class. Plaintiff maintains that Defendants have a policy of sending estoppel certificates to first mortgagees that are deceptive and unfair because they demand payment in amounts that exceed the "safe harbor" limitations. Plaintiff disputes Defendants' claim that they are not required to conduct any due diligence to determine the first mortgagee's status before attempting to collect a debt, and maintains that this practice is inconsistent with generally accepted industry standards and practices. *See* Doc. 32 at ¶ 15. Thus, Plaintiff maintains that Defendants harmed Plaintiff and the members

of the class in the same way and that the only way to stop such conduct is to enjoin them from continuing to send their deceptive estoppel certificates.

Defendants dispute that it is their burden to determine whether or not someone requesting an estoppel certificate is entitled to safe harbor. *See Bermuda Dunes Private Residences v. Bank of Am.*, 133 So.3d 609, 616 (Fla. 5th DCA 2014) (finding that the bank did not carry its burden of presenting evidence of entitlement to first mortgagee status). Thus, Defendants maintain that it is the one claiming entitlement to the safe harbor provisions that bears the burden of proving their entitlement to safe harbor. Defendants further argue that since the requests for estoppel certificates vary greatly as to the amount of information provided, a member's claim would turn at least in part on whether or not the information provided was sufficient to establish the requestor's entitlement to safe harbor.

Plaintiff has not met its burden under Federal Rule of Civil Procedure 23(b)(2) because Plaintiff has failed to show that Defendants have acted or refused to act on grounds that apply generally to the class. As Defendants correctly point out, each proposed class member's claim would turn at least in part on whether or not the information provided was sufficient to establish the requestor's entitlement to safe harbor. The individualized determinations in each member's claim belie the contention that Defendants have acted or refused to act on grounds that apply generally to the class. As such, Plaintiff has failed to satisfy the requirement for certification under Federal Rule of Civil Procedure 23(b)(2).

## 2. Federal Rule of Civil Procedure 23(b)(3)

Federal Rule of Civil Procedure 23(b)(3) is satisfied when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Here, Plaintiff seeks certification of its claims for damages and other equitable relief in Counts III through VI under Federal Rule of Civil Procedure 23(b)(3) on behalf of the Damages Subclass.

### a. Predominance

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Williams v. Mohawk Indus., Inc.*, 568 F.3d at 1357. An inquiry into the predominance of common questions of law or fact "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "[I]n determining whether class or individual issues predominate in a putative class action suit, [the Court] must take into account the claims, defenses, relevant facts, and applicable substantive law." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008)). Common issues predominate if those issues that are subject to generalized proof predominate over those that are subject to individualized proof. *See Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 579 (M.D. Fla. 2006). "On the other hand, common issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of legal and factual issues.'" *Bussey*, 562 Fed.Appx. at 789 (citation omitted). The Supreme Court has held that the predominance criterion is far more demanding than Rule 23(a)'s commonality requirement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. at 624, 117 S.Ct. 2231.

Plaintiff contends that Defendants' uniform course of conduct directed at Plaintiff and the members of the class is the same, i.e., they send deceptive, unfair, and unlawful estoppel certificates to first mortgagees misrepresenting the amounts owed in disregard of the "safe harbor" limitations by demanding payment for unpaid assessments, finance charges, late fees, legal fees, lien costs, underwriting, prior attorneys' fees, accelerated

assessments, and other charges. Plaintiff maintains that an adjudication finding that this business practice is unlawful, would entitle the class to relief based on Plaintiff's common law claims for civil conspiracy, and unjust enrichment, in addition to Plaintiff's statutory claims for actual damages under FDUTPA.

Plaintiff insists that Defendants' course of conduct gives rise to numerous common questions of law and fact. Plaintiff maintains that not only do all of these common questions, when answered, have a direct impact on each Damages Subclass members' claims for liability and damages, but they will conclusively establish each Damages Subclass members' claim for damages under FDUTPA and unjust enrichment without the introduction of any additional evidence.

Defendants dispute that Plaintiff has satisfied Federal Rules of Civil Procedure 23(b)(3). Defendants maintain that the underlying premise for each of Plaintiff's six claims is that Defendants provided improper estoppel certificates which necessarily requires individualized determinations with each instance being subject to individualized defenses. Thus, Defendants contend that each member of the proposed class is inherently differently situated, because each potential class member had to have submitted to BLG a request for an estoppel certificate before any certificate would have been issued. And further, as previously discussed, those requests may or may not have even identified the request as coming from one claiming first mortgagee status, much less provided anything to substantiate that status. Defendants point to Joshua Donham's declaration noting examples of the wide variety of requests for estoppel certificates from potential prospective plaintiff class members. *See supra*; Doc. 41–7 Second Donham Decl. ¶ 8; Ex. B.

Defendants argue that individual issues predominate the instant case because this Court would have to conduct a claim-by-claim analysis to determine whether a proposed class member was actually entitled to the safe harbor provisions. Defendants concede the theoretical potential liability to a proposed class member if the requestor states that they are a first mortgagee seeking an estoppel certificate versus a request which simply asks for a payoff amount without mentioning first mortgagee status. However, Defendants point out that they would still have to determine if they had sufficient information to know whether first time mortgagee status had been established prior to sending an estoppel certificate reflecting the safe harbor amount.

On the instant record, the Court finds that individualized determinations would have to be made with respect to each proposed plaintiff class member. Accordingly, since individual issues predominate, class certification is inappropriate.

### b. Superiority

■ Federal Rule of Civil Procedure 23(b)(3) contains a list of factors to consider when making a determination of superiority:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

The superiority requirement of Federal Rule of Civil Procedure 23(b)(3) focuses "not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269.

■ The Court has examined the factors enumerated in Federal Rule of Civil Procedure 23(b)(3)(A)-(D), such as "the class members' interest in individually controlling the prosecution ... of separate actions," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and manageability issues. Plaintiff has not met its burden to prove superiority— that a class action is a superior method to adjudicating the claims individually. *See* Fed. R. Civ. P. 23(b)(3). The Court notes that this

is not a class action involving small dollar amounts claimed to be due to individual consumers. Rather, this case involves sophisticated commercial parties with ready access to the resources needed to resolve disputes that regularly involve tens of thousands of dollars each. The Florida statutory scheme specifically provides a procedure for these entities to resolve their differences concerning estoppel certificates. *See* Fla. Stat. §§ 718.116(8)(b), 720.30851(2).

The Court agrees with Defendants that the resolution of such issues pursuant to the statutory procedure is superior to a class action because the statutory method permits evaluation of the unique factual issues inherent to such claims on a case-by-case basis, including whether the party claiming safe harbor protection is a first mortgagee. Further, the statutes provide for a "summary," or expedited, proceeding, for prompt resolution of such disputes, and an award of attorney's fees to the prevailing party. *See id.* The Florida Legislature anticipated the need for fair and efficient adjudication of disputes over estoppel certificates, and established a comprehensive and efficient method for resolving these disputes in the statutes. The method established in the applicable statutes is far superior to a class action in which individual issues would predominate. Therefore, this Court finds that class wide resolution of the dispute is not superior to other methods of adjudication.

## IV. Conclusion

Wilmington has not met its burden under Federal Rule of Civil Procedure 23(a) and has likewise failed to satisfy at least one of the alternative requirements of Federal Rule of Civil Procedure 23(b). As a result, this Court will deny Wilmington's Motion for Class Certification.

**ORDERED AND ADJUDGED:**

1. Plaintiff's Motion for Class Certification (Doc. 32) is DENIED.

**DONE AND ORDERED** in Tampa, Florida on February 22, 2017.